# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MARINE CONCEPTS, LLC, a Missouri Limited Liability Company,  Plaintiff,  v.  RICHARD CHRIS KOPPITZ, an individual,  PREMIUM CUSTOM COVERS LLC, a Missouri limited liability company,  and  LAWRENCE FABRIC STRUCTURES, INC., a Missouri corporation,  Defendants. | No. 20-cv-4129-NKL |

**ORDER**

Defendants Richard Chris Koppitz and Premium Custom Covers LLC ("PCC") move to dismiss the claims asserted against them by plaintiff Marine Concepts, LLC and to compel arbitration. For the reasons discussed below, the motion to dismiss and to compel arbitration is granted.

## I. BACKGROUND

Marine Concepts alleges that it entered into a Dealer Agreement with Koppitz dated January 29, 2016 for the sale of its patented boat covers. Doc. 31 (Amended Complaint), ¶ 25; *see also* Doc. 31-4 (Dealer Agreement). While the Dealer Agreement was in effect, Marine Concepts licensed certain patents to and disclosed trade secrets to Koppitz and his company, PCC. *Id.*, ¶ 29.

Koppitz allegedly made and sold boat covers under the Dealer Agreement through his company, PCC. *Id.*, ¶ 28.

Marine Concepts allegedly terminated the Dealer Agreement on or about September 5, 2018. The Dealer Agreement provides that, upon termination, all rights granted to Koppitz revert to Marine Concepts. Doc. 31-4, § 18(f). Koppitz also agreed to maintain the confidentiality of and to cease using Marine Concepts' trade secrets following termination of the Dealer Agreement. *Id.*, § 20(d) and (e). Nonetheless, according to Marine Concepts, after the Dealer Agreement's termination, Koppitz contacted defendant Lawrence Fabric Structures ("LFS"), Inc. to provide boat covers and components of suspended boat cover systems made utilizing the trade secrets of Marine Concepts. *Id.*, ¶¶ 35-36. Marine Concepts alleges that Koppitz and PCC disclosed Marine Concepts' trade secrets to LFS. *Id.*, ¶ 37. Marine Concepts alleges that "Koppitz maintains complete control and domination over the policy, business practice, and finances of PCC," and Koppitz has used that control and domination "to make and sell . . . Infringing Products." *Id.*, ¶¶ 44-45. Marine Concepts alleges that Koppitz and PCC were selling infringing products on their website, which is "likely to deceive or mislead prospective customers." *Id.*, ¶ 51.

The Dealer Agreement contains an arbitration provision that provides, in relevant part:

> Any and all controversies relating to this Agreement, including those relating to its validity, performance, non-performance and termination, . . . shall be settled by arbitration . . . . The arbitration shall be final and binding as to each party.

*Id.*, § 24. The arbitration provision survives termination. *Id.*, § 18(h).

Marine Concepts has asserted claims for patent infringement (Counts I through III), theft of trade secrets (Count IV), misappropriation of trade secrets (Count V), and unfair competition (Count VI). Koppitz, and PCC, which was not a signatory to the Dealer Agreement and indeed allegedly did not exist when the Dealer Agreement was executed, seek to dismiss the claims against them and to compel arbitration.

## II. STANDARD

Under the Federal Arbitration Act, an arbitration agreement is valid and enforceable when it is (1) in writing, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law. *See* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Torres v. Simpatico, Inc.*, 781 F.3d 963, 968-69 (8th Cir. 2015) ("If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration."). Thus, "[w]hen a party moves to compel arbitration, [the Court's] role is to . . . determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001) (quotation marks and citation omitted).

Here, there is no dispute that the Dealer Agreement is valid. The parties dispute only whether the claims at issue fall within the scope of the arbitration provision, and whether non-signatory PCC can invoke the arbitration provision to compel Marine Concepts to arbitrate their disputes.

### a.  <u>Whether the Claims Fall Within the Scope of the Arbitration Provision</u>

The arbitration provision in the Dealer Agreement states, in relevant part, that "[a]ny and all controversies relating to this Agreement, including those relating to its validity, performance, non-performance and termination, . . . shall be settled by arbitration . . . ." *Id.*, § 24.  The Eighth Circuit has held that the language "'relating to' an agreement" in an arbitration provision is "broad."  *See Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad.").  In the face of such broad language, a district court is required to "'send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision.'"  *Id.* (citing *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

Marine Concepts argues that, because it has not asserted claims for breach of the Dealer Agreement, the arbitration provision does not apply.  However, the fact that Marine Concepts does not assert claims for breach of contract does not end the inquiry because the arbitration provision is not expressly limited to contractual disputes.  Rather, it encompasses "[a]ny and all controversies relating to this Agreement"—language that, as discussed above, is "broad."  *Zetor N. Am.*, 861 F.3d at 810; *see also Greenville Hosp. Sys. v. Employee Welfare Ben. Plan for Employees of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 847 (4th Cir. 2015) (holding that the fact that precertification dispute might arise under ERISA "does not mean that its dispute does not also 'relate to' the Agreement . . . , under the terms of the arbitration clause" where "[t]he arbitration clause . . . is not limited to claims that arise exclusively—or indeed, 'arise' at all—under the Agreement; instead, it extends to any claim 'arising out of or relating to' the Agreement"); *cf. Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (finding that claim for misappropriation of trade secrets did not relate to interpretation or performance of

contract because of the absence of "arising out of or relating to" language in the arbitration clause, noting that "the omission of the 'relating to' language is significant").

Marine Concepts has asserted claims for patent infringement, theft of trade secrets, misappropriation of trade secrets, and unfair competition. The Dealer Agreement expressly granted Koppitz a "limited license" with respect to certain patents and trade secrets used to make the Boat Cover and prohibited him from "hav[ing] any third party make the Boat Cover." Doc. 31-4, § 4. The Dealer Agreement provides that, upon termination, all rights granted to Koppitz revert to Marine Concepts. Doc. 31-4, § 18(f). Koppitz "expressly acknowledge[d] that the obligations of Dealer to maintain the confidentiality of the[] trade secrets of MC shall survive termination of this Agreement." *Id.*, § 20(d). Further, Koppitz agreed to "stop using any and all trade secrets of MC upon . . . termination of th[e Dealer] Agreement." *Id.*, § 20(e). Thus, despite the fact that Marine Concepts is not asserting a breach-of-contract claim, Marine Concepts' claims for patent infringement, theft of trade secrets, and misappropriation of trade secrets relate to matters expressly discussed in the Dealer Agreement.

Marine Concepts' unfair competition claim also arguably relates to matters set forth in the Dealer Agreement. The claim is premised on the allegations that "Koppitz's and PCC's copying of Marine Concepts' website has deceived and will likely deceive or mislead prospective customers of Marine Concepts," and that such conduct "is likely to cause the mistaken belief that Defendants' business is that of Marine Concepts, or that Defendants are an agent, dealer, affiliate or associate of Marine Concepts, or that Defendants' services and products are produced, sponsored, or approved by Marine Concepts." Doc. 31, ¶¶ 111-12. These allegations relate to matters addressed in the Dealer Agreement. For example, Koppitz agreed, that, upon termination, he would "forthwith cease and desist from the use, pursuant to this Agreement, of Trademarks or

5

any brand names, trademarks, logos or symbols similar thereto . . . ." Doc. 31-4, § 18(c). Thus, the claim "touch[es]" on matters addressed in the Dealer Agreement. *Zetor N. Am.*, 861 F.3d at 810. At the very least, the meaning of "brand names, trademarks, logos, or symbols similar thereto"—and whether they would include the website features of which Marine Concepts complains—is "ambiguous and susceptible of an interpretation that covers" Marine Concept's unfair-competition claim. *Indus. Wire Prods. v. Costco Wholesale Corp.*, 576 F.3d 516, 521 (8th Cir. 2009).

Because the Court must "interpret arbitration clauses liberally and resolve any doubts in favor of arbitration," *id.*, the Court concludes that the arbitration provision in the Dealer Agreement encompasses all of Marine Concepts' claims.

### b. Whether PCC Can Invoke the Arbitration Provision Against Marine Concepts

The next question is whether PCC, which is not a party to the Dealer Agreement, can compel Marine Concepts to arbitrate the claims asserted against it. The law of Missouri, which governs the agreement at issue (Doc. 31-4, § 25(d)), governs the question of whether a nonsignatory may compel arbitration. *See Neal v. Navient Sols., LLC*, 978 F.3d 572, 575 (8th Cir. 2020) ("To decide whether Navient may compel arbitration, we look to Ohio law governing arbitration agreements and principles of agency.").

The Supreme Court of Missouri has held that, where a plaintiff "makes no differentiation between the signatory and non-signatory defendants, . . . [h]is claim against the defendants is a single one that should be referred in its entirety to arbitration." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 815 (Mo. 2015). The Missouri Supreme Court held that a plaintiff "cannot treat the[] defendants severally for arbitration purposes but jointly for all other purposes."

Here, Marine Concepts has not meaningfully distinguished between the conduct of Koppitz and that of PCC. For example, Marine Concepts alleges that, during the term of the Dealer Agreement, "Koppitz made and sold boat covers under the Dealer Agreement through his company Defendant PCC." Doc. 31, ¶ 28. Marine Concepts alleges that Koppitz and PCC together breached a shared duty to maintain the secrecy of Marine Concepts' trade secrets. *Id.*, ¶¶ 101-03 ("Marine Concepts provided trade secrets to Koppitz and PCC regarding boat covers when Koppitz and his company acted as dealers for Marine Concepts. Marine Concepts made clear to Defendants Koppitz and PCC that the trade secrets were confidential and proprietary and Koppitz and PCC had a duty to keep the information secret. Defendants Koppitz and PCC breached their duty to maintain the secrecy of the trade secrets of Marine Concepts by providing the trade secrets to Defendant LFS without the consent of Marine Concepts."). Marine Concepts alleges that Koppitz and PCC together copied Marine Concepts' website. *Id.*, ¶ 111 ("Defendant Koppitz's and PCC's copying of Marine Concepts' website has deceived and will likely deceive or mislead prospective customers of Marine Concepts."). Marine Concepts further alleges that Koppitz "maintains complete control and domination over the policy, business practice, and finances of PCC," which control he has used "to make and sell the Infringing Products," and that this conduct justifies piercing PCC's corporate veil. *Id.*, ¶¶ 44-46. Finally, although Marine Concepts does not now sue the defendants for breach of the Dealer Agreement, it has previously asserted in correspondence sent before the litigation commenced that both Koppitz and PCC "are in material breach of the Agreement." Doc. 40-1. In that same letter, Marine Concepts invoked the arbitration provision. *Id.*

Under *Hewitt*, Marine Concepts' claims against PCC must be referred to arbitration despite the fact that PCC did not sign the Dealer Agreement. 461 S.W.3d at 815.

## III. CONCLUSION

For the foregoing reasons, the motion by Koppitz and PCC to dismiss the claims against them and compel arbitration is GRANTED. Any of the three parties to the arbitration may reopen this case by filing a motion seeking judicial review within 30 days of the resolution of the arbitration.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: November 30, 2020
       Jefferson City, Missouri